**IN THE UNITED STATES DISTRICT COURT FOR THE
WESTERN DISTRICT OF MISSOURI
CENTRAL DIVISION**

| | |
|---|---|
| OANDREA HAYES, | ) |
| | ) |
| Plaintiff, | ) |
| | ) |
| v. | )   Case No. 2:11-CV-04132-NKL |
| | ) |
| MICHAEL J. ASTRUE, | ) |
| Commissioner of Social Security, | ) |
| | ) |
| Defendant. | ) |

**ORDER**

Plaintiff Oandrea Hayes challenges the Social Security Commissioner's denial of her application for disability insurance benefits under Title II of the Social Security Act, 42 U.S.C. §§ 401, *et. seq*.

Hayes argues that the Administrative Law Judge ("ALJ") erred by: (1) relying in part on Hayes's noncompliance with treatment in discounting Hayes's credibility; (2) failing to assess Hayes's residual functional capacity ("RFC") function-by-function; (3) failing to impose visual or environmental limitations; (4) refusing to give controlling weight to the opinion of a treating physician; (5) failing to follow proper procedure in determining Hayes's mental limitations; and (6) relying on the Medical-Vocational Guidelines rather than on a vocational expert. Hayes also argues that her case should be assigned to a different ALJ on remand. Because the Court finds some of these arguments persuasive, the Court grants Hayes's petition, reverses the ALJ's decision, and remands to the ALJ for further consideration.

**I.     Background**

1

The complete facts and arguments are presented in the parties' briefs and will be duplicated here only to the extent necessary.[1] Hayes filed her application for Social Security Disability Benefits in September 2006, claiming a lung infection that caused difficulty breathing and headaches.

On December 19, 2006, Dr. Lenworth Johnson noted that Hayes had been re-evaluated in the Mason Eye Institute for left eye visual loss "from probably infiltrative optic neuropathy secondary to neurosarcoidosis with probably pulmonary sarcoidosis." (Tr. 422) He stated Hayes was then on PREDNISONE 60 mg daily. (Tr. 422).

Hayes saw Margaret Yoest, APRN, on December 19, 2006, for therapy following the recent stress of diagnosis with sarcoidosis and feeling overwhelmed from life stressors. (Tr. 392-93). A mental status examination showed Hayes was oriented, pleasant, had good eye contact, normal thought flow and content, and was not suicidal or homicidal. (Tr. 393). Nurse Yoest concluded Hayes had an adjustment disorder with depressed mood and recommended continued therapy and support. (Tr. 393).

On January 23, 2007, Hayes was seen for a follow-up of sarcoidosis. She had been on Prednisone for two months without any relief of her symptoms. She was still concerned about her vision loss. (Tr. 437).

On March 7, 2007, she was seen in the Mason Eye Institute. (Tr. 463). It was noted that there was no significant change in visual function. Problems with Prednisone were noted: "[s]he has significant problems with use of Prednisone, particularly with weight gain."

---

[1] Portions of the parties' briefs are adopted without quotation designated.

(Tr. 463).  Dr. Johnson noted that Hayes had planed to discontinue Prednisone, but had agreed to reduce the dose to 30 mg a day.  (Tr. 463).

Hayes was seen in the Family Medicine clinic by her primary treating physician, Dr. Wen, on April 18, 2007.  She was upset about the side effects of Prednisone, particularly fluid retention and weight gain.  Dr. Wen noted that Hayes had discontinued fluoxetine because she had been improving, but was now getting worse again.  (Tr. 439).

On April 25, 2007, Hayes was seen in the Pulmonary Clinic.  (Tr. 518).  Dr. Dhand noted that Hayes had "improved symptomatically and radiologically so we plan to reduce the prednisone dose.  Her DEXA scan does not show evidence of osteoporosis."  (Tr. 518).

Hayes was seen by Maggie Yoest on April 27, 2007.  She had been put back on depression medication by Dr. Wen.  (Tr. 679).  She was concerned about having to take the medication and that she was "fat" because of the prednisone.  (Tr. 679).  Diagnosis was Major Depressive Disorder.  (Tr. 679).  She was seen again by Ms. Yoest on May 30.  Hayes was concerned about increased swelling caused by her medication.  (Tr. 680).

On June 5, 2007, Dr. Johnson noted that Prednisone had been tapered off due to Hayes's feeling "fat and uncomfortable" and pitting edema that was present.  (Tr. 470).  On June 19, 2007, Hayes was seen by Dr. Wen who noted that she still had significant swelling in her feet and that she had trouble fitting into her shoes.  (Tr. 441).  She did not think that her eyesight had improved.  Nonpitting edema was observed.  (Tr. 441).

On July 25, 2007, Hayes was seen in the Pulmonary Clinic.  (Tr. 525).  The resident physician noted Hayes's problems with weight gain.  (Tr. 526).  He noted that the Prednisone

3

dosage had been reduced after Hayes contacted her primary care physician and an urgent care physician and said that she was not going to continue on that dose. Her dosage was thus tapered and she had been off of prednisone for two weeks. (Tr. 526). Hayes's breathing and vision were both worse. (Tr. 526).

On October 17, 2007, Hayes was seen in the Pulmonary Clinic. (Tr. 529). She felt that her breathing was better or the same. She was compliant with her medications. Hayes felt that the vision in her left eye was a little worse. (Tr. 530).

On October 23, 2007, Hayes was seen by Dr. Wen for follow-up for peripheral edema, stress, anxiety and depression. She had had a constant headache for three days. She felt stressed about her medical condition. (Tr. 443). Hayes stated she was not taking prednisone as prescribed because it caused weight gain. (Tr. 443). Dr. Wen commented that Hayes stated her left eye vision was impaired "despite her scoring better on objective tests with Dr. Johnson." (Tr. 443). Hayes also stated she felt very stressed, but had not been taking fluoxetine as prescribed and was not seeing Nurse Yoest for counseling regularly. (Tr. 443). Dr. Wen's objective examination showed Hayes was not in any acute distress and her mood and affect were level. (Tr. 443). The physician assessed Hayes with a right-sided occipital head pain with an unclear etiology, although probably not related to sarcoidosis, and stress and depression related to her diagnosis of sarcoidosis (Tr. 443-44). In a handwritten statement on a prescription pad, Dr. Wen stated Hayes "[i]s seeking disability due to sarcoidosis with decreased vision, dyspnea. Is currently unable to work and is disabled." (Tr. 592).

4

On November 6, 2007, Hayes was seen by Dr. Wen. Her headaches had improved. She was taking Prednisone every other day. (Tr. 445). On January 15, 2008, Hayes was seen by Dr. Wen who noted that Hayes continued to feel anxious and depressed at times. Her headaches continued. Medication was adjusted. (Tr. 447). On January 28, 2008, she was seen again by Dr. Wen. She continued with headaches. Effexor was increased. (Tr. 543). On February 8, 2008, she was seen by Maggie Yoest. Mood was improved. (Tr. 682).

On March 4, 2008, Dr. Wen answered interrogatories from Hayes's attorney relating to Hayes's ability to perform sedentary work. Dr. Wen stated Hayes could lift 10 pounds occasionally and could usually stand and walk a total of two hours in an eight-hour day, but would get winded with excessive walking. (Tr. 589). Dr. Wen also stated that Hayes's headaches "may interfere with work when severe at times." (Tr. 591).

On March 27, 2008, Hayes was seen by Dr. Sivaraman of the Department of Neurology. He noted that Hayes had multiple neurological complaints, including a history of a seizure disorder, and that her headaches were under better control. (Tr. 598-599). Dr. Wen wrote on April 30, 2008, that over the last week Hayes had started to have her headaches again. She had stopped taking the Topamax and Prednisone. She was encouraged to resume the medications. (Tr. 601-602). Dr. Wen wrote again on June 16, that he encouraged Hayes to resume Prednisone. She objected to the weight gain. (Tr. 602-604).

On November 25, 2008, Hayes was seen by Dr. Wen. She was unable to increase her dose of Topamax because of insurance problems. She still complained of chest wall pain. The only pain on breathing was the pain associated with the sarcoidosis. (Tr. 622). It was

5

unclear as to how much of a role anxiety played in her symptoms. (Tr. 623). Hayes was no longer taking Effexor or clonazepam, "more due to neglect than anything else." (Tr. 737).

On February 18, 2009, Dr. Sivaraman, Hayes's treating neurologist wrote: "TO WHOM IT MAY CONCERN—OANDREA HAYES is a patient of mine since June 12, 2006 whom I saw initially for headaches following Multiple Motor Vehicle accidents. Her headaches are reasonable under control on medication." (Tr. 684).

On May 5, 2009, Hayes was seen by Maggie Yoest, her psychiatric nurse therapist. (Tr. 704). She had not been seen in a year due to losing her insurance. Her mood was doing well over-all. (Tr. 704).

On July 13, 2009, Hayes was seen in the Pulmonary Clinic. (Tr. 745). She related that many of her breathing problems were better. Advair was continued and Dr. Sunna noted that after four months, consideration would be given to changing to inhaled steroid for asthma. (Tr. 747). Hayes was seen by Dr. Wen on August 12, 2009. She had not been taking some of her medications since she could not afford them. (Tr. 749).

Hayes attended an administrative hearing held February 19, 2009. (Tr. 773). Counsel was asked if Hayes was alleging a mental impairment and responded in the negative. (Tr. 781). However, Hayes testified that she had been seeing Margaret Yoest for counseling. Hayes stopped seeing Ms. Yoest when she lost her Medicaid, as she had no way to pay. She had just started receiving Medicaid again and was trying to make an appointment to see Ms. Yoest again. (Tr. 781-82). Additional records were to be submitted after the hearing. (Tr. 782). There was no vocational expert present. (Tr. 773). The record closed. (Tr. 787).

6

After counsel and Hayes left the room, the record was reopened by the ALJ, who mentioned that Hayes had left the room crying. The ALJ stated on the record that she found Hayes's testimony "extremely inconsistent" and listed the inconsistences she had observed. (Tr. 788-90).

The ALJ, in her decision, found that Hayes had the severe impairments of headaches and sarcoidosis. (Tr. 23). The ALJ assessed the following RFC to Hayes:

> After careful consideration of the entire record, the undersigned finds that the claimant has the residual functional capacity to perform light work as defined in 20 CFR 404.1567(b) and 416.967(b) except she is limited to unskilled work.

(Tr. 23). The ALJ consulted the Medical-Vocational Guidelines and found that jobs existed in significant numbers in the national economy that someone with Hayes's RFC could perform, and that Hayes was thus not disabled.

## II.    Discussion

In reviewing a denial of disability benefits, the Court considers whether the ALJ's decision is supported by substantial evidence on the record as a whole. *See Travis v. Astrue*, 477 F.3d 1037, 1040 (8th Cir. 2007). "Substantial evidence is evidence that a reasonable person might accept as adequate to support a decision." *Cox v. Barnhart*, 245 F.3d 606, 608 (8th Cir. 2003) (internal quotes omitted).

### A.    The ALJ's Giving Weight to Hayes's Noncompliance with Treatment

Hayes argues that the ALJ erroneously considered Hayes's noncompliance with prescribed medication in discounting Hayes's credibility. Hayes argues that under SSR 82-59, the ALJ was required to determine whether Hayes had a "justifiable cause" for

7

noncompliance before giving weight to her noncompliance. Hayes further argues that because the record reflects that Hayes at times could not afford prescribed treatment, including complications in getting Medicare to cover such treatment, Hayes had a "justifiable cause" for noncompliance. *See Tome v. Schweiker*, 724 F.2d 711, 714 (8th Cir. 1984). But the Commissioner correctly argues that SSR 82-59 does not restrict how an ALJ can rely on a claimant's noncompliance when evaluating a claimant's credibility. *Holley v. Masanari*, 253 F.3d 1088, 1092 (8th Cir. 2001). Thus, there is no procedural error, and the Court need only determine whether there exists substantial evidence on the record for the ALJ's undermining Hayes's credibility.

The Commissioner agrees that there is evidence on the record reflecting noncompliance because of an inability to pay, but also points to conflicting evidence on the record, including a statement by treating physician Dr. Wen that Hayes was noncompliant with medication "more due to neglect than anything else." (Tr. 737). In light of this statement, as well as other references in the record noting non-compliance without noting an inability to pay, the Court finds substantial evidence on the record to support the ALJ's conclusion on this issue.

Hayes also argues that her non-compliance was due to the significant side effects of the medication, but provides no authority for why this was an improper basis for the ALJ to undermine Hayes's credibility. Hayes references several places in the record reflecting that Hayes's prescribed medication caused serious weight fluctuation and mood changes. But the record also reflects in several places that Hayes limited her own usage of prescription

8

medication on an ad hoc basis, without consulting her doctors. Hayes also admits that she

was noncompliant with medications that did not have complained-of side effects and that it

was "not clear from the medical record" why this was so. [Doc. # 13 at 25]. Under these

facts, the side effects of Hayes's medication do not change the Court's analysis; substantial

evidence exists for the ALJ's treatment of Hayes's credibility.

**B.        The ALJ's Failure to Assess Hayes's RFC Function-by-Function**

Hayes argues that the ALJ erred by merely stating that Hayes was capable of "light

work" without making any specific findings on Hayes's restrictions. In *Pfitzner*, the ALJ

only described the claimant's RFC in "general terms," such as by stating the claimant could

"perform a wide range of medium work" or could "perform work related activities except for

working limitations described in the body of this decision." *Pfitzner v. Apfel*, 169 F.3d 566,

568 (8th Cir. 1999). The Eighth Circuit remanded, holding: "Because the ALJ failed to

specify the details of Pfitzner's residual functional capacity, we cannot say that substantial

evidence supports his conclusion that Pfitzner retained the functional capacity to return to

his past work." *Id.* at 568-69.

The Eighth Circuit distinguished that case in *Depover v. Barnhart*, 349 F.3d 563, 567

(8th Cir. 2003). There, the ALJ made specific findings in his RFC for every functional

limitation included in 20 C.F.R. § 404.1545(b) except for the claimant's limitations in sitting,

standing, and walking. *Id.* The Eighth Circuit held that because the ALJ made explicit

findings on most of the claimant's functions, and found limitations in all of the functions

mentioned, this implied the ALJ did not find limitations on functions not explicitly

mentioned. *Id.* at 567-68. The Eighth Circuit denied remand after finding substantial evidence for the ALJ's implicit findings of no limitation on the claimant's ability to sit, stand, or walk. *Id.* at 568.

The ALJ's decision in this case is more analogous to *Pfitzner* than to *Depover*. Because the ALJ made no explicit findings as to Hayes's functional limitations, there are no grounds on which to imply that the ALJ found no limitations on any particular function. Remand is thus appropriate under *Pfitzner*.

### C.     The ALJ's Failing to Include Specific Visual or Environmental Limitations in Hayes's RFC

Hayes argues that substantial evidence did not exist for the ALJ's failure to include any specific visual or environmental limitations in Hayes's RFC. Because the ALJ did not include *any* specific limitations in her decision, the Court cannot on this record determine whether substantial evidence existed for the ALJ's conclusion. *Pfitzner v. Apfel*, 169 F.3d 566, 568-69 (8th Cir. 1999). The ALJ is instructed on remand to specifically address whether she finds that Hayes had any visual or environmental limitations.

### D.     The ALJ's Refusal to Give Controlling Weight to the Opinions of Treating Physician, Dr. Wen

Hayes argues that the ALJ erred in failing to give controlling weight to the opinions of Hayes's treating physician, Dr. Wen. "ALJs are not obliged to defer to treating physician's medical opinions unless they are well-supported by medically acceptable clinical and laboratory diagnostic techniques and are not inconsistent with the other substantial evidence in the record." *Juszczyk v. Astrue*, 542 F.3d 626, 632 (8th Cir. 2008) (internal quotes

10

omitted).

The ALJ stated in her decision that she did not give significant weight to Dr. Wen's opinions, which the ALJ found to not be supported by Dr. Wen's treatment notes. Specifically, the ALJ pointed out that Dr. Wen opined in 2007 that Hayes was disabled but indicated in 2008 that Hayes could do sedentary work. The Court agrees that the ALJ was not bound by either of these conclusions, as they go to the ultimate issue of disability, which is reserved for the Commissioner. *See Ellis v. Barnhart*, 392 F.3d 988, 994 (8th Cir. 2005). The Court also agrees that Dr. Wen has rendered inconsistent opinions on the record, and that there was substantial evidence on the record for the ALJ's decision not to give controlling weight to Dr. Wen's opinions. *See Pirtle v. Astrue*, 479 F.3d 931, 935 (8th Cir. 2007). Because the ALJ's RFC determination was incomplete, the Court cannot determine the precise weight the ALJ gave to Dr. Wen's opinions in order to assess whether substantial evidence exists for the ALJ's decision. But to the extent the ALJ rejected the functional limitations opined by Dr. Wen because the ALJ believed those opinions were inconsistent with Dr. Wen's treatment notes, the Court reminds the ALJ that Dr. Wen's opinions remain medical evidence that the ALJ, on remand, can only reject "based on contradicting medical evidence, not on the ALJ's own judgments or opinions." *See Juszczyk v. Astrue*, 542 F.3d 626, 632 (8th Cir. 2008).

E.     **The ALJ's Failure to Follow Proper Procedure in Evaluating Hayes's Mental Limitations**

Hayes argues that the ALJ erred by failing to evaluate the degree of functional loss to

11

Hayes from her mental impairments, as required by 20 C.F.R. § 404.1520a(c)(3), before determining if Hayes's mental impairments are severe under the Act. The Commissioner admits that the ALJ failed to follow the regulations, but essentially argues that the error is harmless because substantial evidence exists on the record for the ALJ's conclusion that Hayes's mental impairments were not severe. The Court agrees that the ALJ erred by failing to evaluate the functional areas identified in § 404.1520a(c)(3) and instructs the ALJ to follow proper procedure on remand. Because the ALJ has not yet evaluated Hayes's functional loss due to her mental impairments, the Court cannot determine at this time whether substantial evidence existed for the ALJ's conclusion that Hayes's mental impairments were not severe.

### F.        The ALJ's Reliance on the Medical-Vocational Guidelines

Hayes argues that the ALJ was required to consult a vocational expert to determine job availability for someone with her visual and environmental limitations. Where an ALJ imposes environmental or visual limitations, that ALJ is required to consult a vocational expert in determining the claimant's disability. *See Ellison v. Sullivan*, 921 F.2d 816, 820 (8th Cir. 1990) (environmental); *Nesselrotte v. Sullivan*, 939 F.2d 596, 598 (8th Cir. 1991) (visual). Because the Court cannot determine at this time whether substantial evidence exists for the ALJ's failure to include specific visual or environmental limitations, the Court cannot determine whether the ALJ was required to consult a vocational expert.

### H.        Whether Hayes's Claim Should be Assigned to a Different ALJ on Remand

Hayes requests that her claim be assigned to a different ALJ on remand. But Hayes

does not provide a source of authority for the Court to take this action, nor a single Eighth

Circuit case granting this relief. In fact, the Regulations commit the assignment of an ALJ

to the Commissioner, and provide an administrative procedure for requesting a different ALJ

because of prejudice or partiality. *See* 20 C.F.R. § 404.940. A federal court can review the

Commissioner's assignment of an ALJ, and can grant relief if that decision is "made with the

intent...[of] depriving a party of a fair hearing." *Sykes v. Bowen*, 854 F.2d 284, 288 (8th Cir.

1988) (affirming the decision of an ALJ who presided over a claimant's first hearing to

reassign himself to that claimant on remand). Because an ALJ has not yet been assigned to

Hayes's case on remand, Hayes's request is not ripe for adjudication. *See National Park*

*Hospitality Ass'n v. Dep't of the Interior*, 538 U.S. 803, 807-08 (2003). The Court thus

refuses to assign Hayes's case to a different ALJ on remand.

## III.    Conclusion

Accordingly, it is hereby ORDERED that Oandrea Hayes's Petition [Doc. # 3] is

GRANTED. The decision of the ALJ is REVERSED and remanded for further proceedings

consistent with this Order.


                                                    s/ Nanette K. Laughrey
                                                    NANETTE K. LAUGHREY
                                                    United States District Judge

        Dated: February 6, 2012
        Jefferson City, Missouri


13